**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT**

| | |
|---|---|
| HEARTLAND ALLIANCE NATIONAL IMMIGRATION JUSTICE CENTER, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, UNITED STATES IMMIGRATION AND CUSTOMS ENFORCEMENT, UNITED STATES OFFICE OF CIVIL RIGHTS AND CIVIL LIBERTIES, UNITED STATES DEPARTMENT OF HOMELAND SECURITY OFFICE OF GENERAL COUNSEL, and UNITED STATES DEPARTMENT OF HOMELAND SECURITY PRIVACY OFFICE (a/k/a EXECUTIVE SECRETARIAT), <br><br> Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.  12 C 9692 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Heartland Alliance National Immigration Justice Center ("NIJC")—a non-profit organization dedicated to ensuring human rights protections and access to justice for immigrants, refugees, and asylum seekers—by and through its undersigned counsel, and for its complaint against the United States Department of Homeland Security ("DHS"), the United States Citizenship and Immigration Services ("USCIS"), the United States Immigration and Customs Enforcement ("ICE"), the United States Office of Civil Rights and Civil Liberties (CRCL), DHS Office of General Counsel ("OGC"), and DHS Privacy Office (a/k/a DHS Executive Secretariat) (collectively, the "Agency" or "Defendants") states as follows:

## NATURE OF THE CASE

1.     This is an action under the Freedom of Information Act ("FOIA" or the "Act"), 5 U.S.C. § 552, as amended, to require the Agency to comply with its obligations under that important Act by producing documents relating to the Agency's arbitrary use of a statutory bar to asylum seekers codified at 8 U.S.C. § 1182(a)(3)(B)(vi)(III), INA § 212(a)(3)(B)(vi)(III).  This statutory provision allows the Agency to deny asylum to individuals who are members of or provide assistance to what are often called "Tier III terrorist groups" or "undesignated terrorist groups or organizations."

2.     The DHS's use of this Tier III terrorism bar to arbitrarily deny otherwise qualified asylum seekers has been a concern of the main stream media, members of congress, and public advocacy and interests groups such as the NIJC.

3.     To learn more about the DHS's application of this Tier III terrorism bar, NIJC, through its undersigned counsel, submitted a FOIA request on September 1, 2011—over a year ago.  Despite NIJC's good faith efforts to work with the DHS to obtain the information sought, the Agency has disregarded its statutory obligations and failed to provide the information sought, including basic and key documents sought by the NIJC's FOIA Request—for example a list of the Tier III groups themselves, which the Agency has previously represented to another federal court was a list that existed.

4.     As a result of the Agency's failure to comply with FOIA, NIJC is forced to bring this suit to compel the Agency (1) to conduct an adequate search for responsive documents and (2) to produce all responsive documents and/or to provide an appropriate final response within the time specified under FOIA.

5.     In addition, USCIS violated FOIA when it arbitrarily reversed its position on NIJC's status as a representative of the news media.  Under Section 552(a)(4)(A)(ii) of FOIA,

parties who are designated as representatives of the news media shall have the document production fees incurred by a public agency in producing documents "limited to reasonable standard charges for document duplication," and search fees may **not** be assessed against a representative of the news media. *See* 5 U.S.C. § 552(a)(4)(A)(ii).

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*.

7.     Venue lies in the Northern District of Illinois pursuant to 5 U.S.C. § 552(a)(4)(B) because NIJC's principal place of business is within this district.

## PARTIES

8.     Plaintiff NIJC is an Illinois non-profit entity dedicated to ensuring human rights protections and access to justice for immigrants, refugees, and asylum seekers.  NIJC provides direct legal services to more than 10,000 individuals each year and advocates for these populations through direct representation, policy reform, impact litigation, and public education. For years NIJC has taken a leading role in informing the public and community about important asylum law issues.  It is crucial to NIJC's mandate to obtain and disseminate information regarding the government's unrestricted and subjective categorization individuals and groups as terrorists under its Tier III terrorist program.  NIJC's principal place of business is Chicago, Illinois.  NIJC submitted the FOIA request that is the subject of this action.

9.     Defendant DHS is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).  DHS has possession of, and control over, the information sought by NIJC under FOIA.

10.     Defendant USCIS is a component agency of DHS and is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).  USCIS has possession of, and control over, the information sought by NIJC under FOIA.

11.     Defendant ICE is a component agency of DHS and is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).  ICE has possession of, and control over, the information sought by NIJC under FOIA.

12.     Defendant CRCL is a component agency of DHS and is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).  CRCL has possession of, and control over, the information sought by NIJC under FOIA.

13.     Defendant OGC is a component agency of DHS and is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).  OGC has possession of, and control over, the information sought by NIJC under FOIA.

14.     Defendant DHS Privacy Office is a component agency of DHS and is an agency of the United States within the meaning of 5 U.S.C. § 552(f)(1).  DHS Privacy Office has possession of, and control over, the information sought by NIJC under FOIA.

## FACTUAL ALLEGATIONS

**I.     NIJC's Pro Bono Immigration Work And The Tier III Terrorism Bar.**

15.     NIJC is dedicated to ensuring human rights protections and access to justice for all immigrants, refugees and asylum seekers.  To that end, NIJC provides direct legal services to and advocates for these populations through policy reform, impact litigation, and public education.  One of the core missions of NIJC is to provide pro bono legal services to individuals seeking asylum in the United States.  This good work is carried out through NIJC's staff and the voluntary efforts of hundreds of lawyers in private practice including at many of the nation's leading law firms.

16.     Through its day to day work advocating for immigrants through direct legal services, NIJC and its network of pro bono attorneys have experienced first hand the DHS's arbitrary use and application of the Tier III terrorism bar, and have seen it adversely and unfairly affect many individuals who should have qualified for asylum status.  Examples of the misuse of this Tier III terrorism bar have been detailed in various public interest group reports, for example, *Denial and Delay:  The Impact of the Immigration Law's "Terrorism Bars" on Asylum Seekers and Refugees in the United States*, Human Rights *First* (Nov. 2009, available at http://www.humanrightsfirst.org/wp-content/uploads/pdf/RPP-DenialandDelay-FULL-111009-web.pdf) ("Human Rights *First* Report").  As that Report indicates, the Tier III terrorism bar has been used to deny asylum to individuals such as:

- A refugee from Burundi, who was detained for over 20 months, because the DHS took the position he provided "material support" to a rebel group because that group stole four dollars from this individual and his lunch;

- A young girl who, at age 12, was kidnapped by an alleged Tier III group that forced her to engage in armed conflict under threat of her life.

Human Rights *First* Report at 2.

17.     The Tier III terrorism bar was created as part of the USA Patriot Act which created a three-part definition of "terrorist organizations" for the purposes of immigration law. The Tier III group includes "any group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in" acts that the Agency deems to be a "terrorist activity," which can include any unlawful use of a weapon for purposes other than personal enrichment.

18.     The Tier III terrorism bar applies not only to those who actively participate in such groups or actively engage in violent conduct, but also to individuals that provide "material

support" to such organizations.  Yet the Agency refuses (and continues to refuse notwithstanding NIJC's FOIA Request) to publish or disclose the identities of these so-called Tier III groups.

## II.     NIJC's FOIA Request.

19.     To learn more about the DHS's use of this Tier III terrorism bar, and given the lack of publicly available information regarding this bar to asylum, on September 1, 2011, NIJC issued a FOIA request to DHS.  A true and accurate copy of the "Request" is attached hereto as Exhibit A.

20.     The Request sought documents related to DHS's interpretation and implementation of 8 U.S.C. § 1182(a)(3)(B)(vi)(III), INA § 212(a)(3)(B)(vi)(III) including how the agency conducts research regarding a potential Tier III terrorist organization, how the agency determines that a group constitutes a Tier III terrorist organization, how this information is shared among the various subcomponents of DHS, and how the agency reviews a determination that a group constitutes a Tier III terrorist organization.  *See* Ex. A., pp. 5-9.  The Request also sought information relating to the criteria applied—if there is any criteria—in making the determination that a group was a terrorist organization and in applying the Tier III terrorism bar to asylum seekers.  *See id*. pp. 6-7.

21.     Despite significant public concern and interest, the information requested is not currently available publicly even though it relates to a core and fundamental operation of the federal government.

22.     The Request sought several single, identifiable documents that have not been produced nor designated as exempt despite the fact the Request has been outstanding for over a year.  For example, the NIJC requested production of "[a]copy of the list of Tier III terrorist organizations kept by USCIS as referred to in *Ahmed v. Scharfen*, No. 08-1680, 2009 U.S. Dist. LEXIS 591, at *21 (N.D. Cal. Jan. 7, 2009), as it existed on December 15, 2008 when the

government's counsel represented to the Court that such a list existed," as well as any subsequent lists. Exhibit A at 5, Request 1.

23.     To date, none of these readily identifiable documents have been produced nor has NIJC received any response claiming that these documents are somehow exempt from FOIA.

24.     Similarly, the Request seeks other narrowly-tailored categories of information. For example, the Request seeks reports or similar documents that discuss the use, interpretation, or criteria for the application of the Tier III terrorism bar. *Id*., Request 2. Other examples include: (A) copies of any "statements of policy and interpretations that have been adopted by the agency and are not published in the Federal Register relating to Tier III terrorist organization grounds of inadmissibility or Tier III terrorist organizations" *id*., Request 8; (B) any "administrative staff manuals and instructions to staff that affect a member of the public relating to Tier III terrorist organization grounds of inadmissibility or Tier III terrorist organizations" *id.*, Request 9; (C) "[d]ocuments related to the process by which Tier III terrorist organizations are defined" *id.*, Request 12; and (D) "[c]opies of any reports, memoranda, spreadsheets, or other documents provided by the Agency to any Congressional committee, including the House and Senate Judiciary Committees, or any members or staff thereof, regarding Tier III terrorist organization grounds of inadmissibility or Tier III terrorist organizations" *id.*, Request 15.

## III.    The Agency Responds By "Splitting" The FOIA Request And Directing It To Numerous Subcomponents, Who Almost Uniformly Fail To Comply With FOIA.

25.     NIJC's Request was directed at the DHS as a whole. However, in the DHS's initial response[1] it also forwarded the Request to four subcomponents: OGC, ICE, OIG, and

---

[1] The DHS's actual initial response was sent on September 7, 2011, but NIJC was advised promptly thereafter that it was inadvertently sent due to an administrative error and that the response was replaced by the letter attached hereto as Exhibit B.

USCIS.  Exhibit B at 5.  The DHS also indicated it would undertake a search of the DHS Privacy

Office.  *Id.* at 6.

26.     Despite segmenting the Request in this manner, the DHS and the various

subcomponents have completely failed to timely or adequately respond to the Request.

27.     Under FOIA, the Agency had 20 days to respond to the Request.  In the event that

an agency encounters certain enumerated "unusual circumstances," the agency is permitted to

invoke an extension of not more than 10 days.  Accordingly, an agency has, at most, 30 business

days to provide an affirmative response to a requesting party.  Here, the FOIA timing

requirements permitted the Agency, at best, until October 14, 2012, to provide the documents

responsive to the Request.

28.     Despite NIJC's tireless attempts to obtain documents from each and every

subcomponent, Defendants failed to adhere to FOIA and conduct a reasonable search, produce

responsive documents and provide responses in the absence of production within FOIA's strict

time period.

**A.     DHS**

29.     On September 13, DHS provided an initial response to the Request and accepted

NIJC's status as a representative of the news media, making clear that the only charges to be

assessed to NIJC were for duplicating.  A true and correct copy of this letter is attached hereto as

Exhibit B.

30.     Also in its initial response, DHS requested the 10-day extension within which to

respond, citing the requisite "unusual circumstances" as the NIJC requesting "numerous

documents that will necessitate a thorough and wide ranging search."

31.     DHS acknowledged the substance of the NIJC's requests but splintered responsibility for responding to the Request among a number of subcomponents, including but not limited to the groups named as defendants herein.

32.     The effect of DHS's fracture required NIJC to multiply its efforts to obtain documents, dealing with upwards of 10 different subcomponents.

33.     After its initial response, DHS requested and NIJC provided a variety of tools to prioritize subparts of the Request to expedite DHS's review and production of responsive documents.

34.     Nonetheless, DHS failed to conduct an adequate review and provide documents at all, let alone within the time period specified under FOIA.

35.     As noted above, DHS disseminated NIJC's request to various subcomponents for their response.  The response by each subcomponent, or lack thereof, was as follows:

**B.     USCIS**

36.     Over six months after USCIS's time to respond under FOIA expired, USCIS responded to NIJC on April 27, 2012, by email.  A true and correct copy of this letter is attached hereto as Exhibit C.  The sole purpose of that correspondence was to recognize NIJC as a member of the news media.  *See id*.

37.     On May 16, 2012, USCIS provided another response including a document production. In the accompanying letter, USCIS alluded to future, rolling productions of documents.  A copy of that letter is attached hereto as Exhibit D.  To date, no such productions have been made.

38.     One month later and without elaboration or explanation, USCIS revoked its determination that NIJC is a member of the news media by letter dated June 22, 2012.  A true and correct copy of this letter is attached hereto as Exhibit E.

39.     On information and belief, these documents represent a small fraction of the responsive documents in USCIS's possession.

40.     On August 20, 2012, NIJC appealed USCIS's revocation of NIJC's media status and USCIS's failure to timely produce responsive documents. No ruling has yet been issued in response to NIJC's appeal.

**C.     ICE**

41.     By DHS's initial response letter, DHS referred the Request to ICE for its review and compliance with the Request.

42.     ICE has failed to respond in any manner to the Request.

**D.     CRCL**

43.     On September 30, 2011, CRCL provided a final response letter to NIJC which included a cursory determination that the CRCL located no documents responsive to the Request. A true and correct copy of the CRCL's response letter is attached hereto as Exhibit F.

44.     NIJC timely appealed CRCL's the general and conclusory response on November 23, 2011.

45.     The CRCL should have documents responsive to the Request, including complaints by the public regarding the DHS's application and use of the Tier III terrorist organization grounds of inadmissibility, particularly since this is an issue that has been documented in the mainstream news media

46.     On May 18, 2012, NIJC received a determination from the Office of the Administrative Law Judge, United States Coast Guard ("ALJ") who concluded that CRCL's search was reasonable and upheld the CRCL's no records determination. A true and correct copy of the ALJ's order is attached hereto as Exhibit G.

### E.    OGC

47.    On September 30, 2011, OGC provided a final response letter to NIJC which included a cursory determination that after conducting an adequate search, OGC located no documents responsive to the Request.  A true and correct copy of the OGC's response letter is attached hereto as Exhibit H.

48.    On November 23, 2011, NIJC appealed OGC's general and conclusory response. The OGC's response failed to provide any specific statements regarding the nature of the search performed, for example whether it included the use of search terms and, if so, what search terms were used.

49.    The general and conclusory response strongly suggests that little or no efforts were made to search for documents response to the NIJC FOIA request.

50.    The OGC response letter is an obvious "copy and paste" from a related letter received by the NIJC from CRCL; i.e., the letter retains references to CRCL in paragraph 3. *Compare* Ex. G *with* Ex. F.

51.    Moreover, given the nature of the OGC's mission, it should have documents responsive to the Request, including memoranda regarding the Tier III terrorist organization grounds of inadmissibility.

52.    On May 18, 2012, the ALJ issued an order remanding the matter because the record lacked evidence that the OGC had conducted a reasonable search. A true and correct copy of the ALJ's order is attached hereto as Exhibit I.   Less than two weeks later, the ALJ reversed and issued a final order finding that OGC's search was reasonable.  A true and correct copy of the ALJ's second order is attached hereto as Exhibit J.

F.      **The DHS Privacy Office (a/k/a DHS Executive Secretariat)**

53.     On May 16, 2012, over nine and one-half months after the Request was received, NIJC received the DHS Privacy Office's final response which provided 33 pages of documents. Prior to this, NIJC had not received any correspondence from the DHS Privacy Office. A true and correct copy of the DHS Privacy Office's letter and document production is attached hereto as Exhibit K.

54.     In addition, with respect to the few documents produced by the DHS Privacy Office, improper redactions were taken. Specifically, The DHS Privacy Office withheld certain information under FOIA exemption (b)(6) which excludes records from disclosure that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

55.     In its final determination letter, the DHS Privacy Office only provided general and conclusory statements regarding the application of the (b)(6) exemption which in no way demonstrate how the specific information being redacted and withheld satisfies the statutory criteria for (b)(6). The redactions, on their face, do not qualify for (b)(6) treatment.

56.     The redactions to DHS-ES 007-008 are in the context of a letter from the House of Representatives Judiciary Committee. Ex. H at DHS-ES 007-008. That letter specifically referenced an individual's immigration situation "whose story was highlighted by the Washington Post on March 23, 2008." *Id.* A true and correct copy of that referenced article is attached hereto as Exhibit L and discloses that the former Iraqi translator at issue is named Saman Kareem Ahmad. Yet the DHS Privacy Office redacted that name twice on the first page of this letter even though the letter itself made clear this name had been included in the Washington Post article being referenced. *See* Ex. H at DHS-ES 007.

- 12 -

57.     Similarly, on DHS-ES 012, the DHS Privacy Office redacted two names from Senator Jim Bunning's letter to Michael Chertoff, the then Secretary of DHS.  *See* Ex. H. at DHS-ES-012.  At least one of those names, however, was also featured in a public press story, specifically Lino Nakwa.  Mr. Nakwa's story was featured in an April 19, 2008 article published by the Louisville Kentucky Courier-Journal, a true and correct copy of which is attached as Exhibit M.

58.     The repetition of the mere name of an individual that is already a subject of press attention does not constitute an "unwarranted invasion of personal privacy" even assuming a name standing alone could ever be considered a "personnel and medical file" or "similar file."  5 U.S.C. § 552(b)(6).

59.     The DHS Privacy Office's final redactions appear to be the direct-dial *office* telephone number for Secretary Janet Naplitano.  *See* Ex. H at DHS-ES 029 and DHS-ES 033. This redaction is also improper and arbitrary as the disclosure of a government-paid office phone number for a high-ranking public official could not lead to an "unwarranted invasion of personal privacy."  5 U.S.C. § 552(b0)(6).

60.     The focus of NIJC's request was not to obtain private information.  Indeed, the FOIA Request's first instruction specifically requested the redaction of truly private information. Ex. A, Request at 2, Instruction 1.  However, the information at issue does not fall under that Instruction

61.     NIJC appealed the determination of the DHS Privacy Office, including its improper redactions, on July 13, 2012.  On November 26, 2012, the ALJ issued its order remanding the file back to the DHS Privacy Office for more information as to how the search was conducted.  A true and correct copy of the ALJ's order is attached hereto as Exhibit N.  To

date, the DHS Privacy Office has not responded to the Order. The Order did not address the issue of the redactions. *See* Ex. N.

**IV.     The DHS Correctly Recognizes That NIJC Qualifies As A Representative Of The News Media But The USCIS Inexplicably (And Without Any Basis) Reversed Course And Refused To Treat NIJC As A Representative Of The News Media.**

62.     The NIJC qualifies as "a representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(III) and 6 C.F.R. § 5.11(b)(6), as the DHS correctly recognized. *See* Ex. A at 9-11 (laying out facts showing NIJC qualified as a representative of the news media); Ex. B at 5 (DHS's acknowledgement that NIJC so qualified).

63.     Under this statutory provision, "fees shall be limited to reasonable standard charges for document duplication," and search fees may ***not*** be assessed against a representative of the news media. DHS's own regulations provide for a broad definition of who qualifies as a representative of the news media. 6 C.F.R. § 5.11(b)(6) (defining representative of the news media as "any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public.").

64.     For years NIJC has taken a leading role in informing the public and community about important asylum law issues. For example, an August 2006 archived copy of the NIJC website shows that "NIJC is able to provide expert analysis and, in many cases, client stories and interviews to members of the press corps." *See* Ex. A at Ex. 1. The page further reveals that NIJC was providing information to major news outlets such as the Chicago Sun-Times and Chicago Tribune, among others.

65.     NIJC distributes editorial content on a regular basis, including press releases, "Top Stories," "Client Stories," "Pro Bono Q&A," and many other items and categories of editorial content that are published on NIJC's website at http://www.immigrantjustice.org/. Additionally, NIJC has a mailing list of over 1,500 members, 1000 twitter followers, and over

400 facebook friends allowing the NIJC to disseminate these materials broadly through several forms of media.

66.     Furthermore, NIJC has published the Request on its website has provided updates posting responsive documents for use by the public, asylum lawyers, and other members of the press.  This fact alone demonstrates that NIJC qualifies as a representative of the news media.

67.     By letter dated on April 27, 2012, the USCIS recognized that NIJC qualified as a representative of the news media.  Ex. C.  Then, by letter dated June 22, 2012, USCIS attempted to reverse its determination.  *See* Ex. E.  USCIS failed to provide any reason for making the change or substantive analysis as to why NIJC wouldn't qualify.  *See id*.

68.     The USCIS's decision to change its classification of NIJC's status is arbitrary, capricious, and wrong as a matter of law.  The USCIS also facially made this decision to change classification without *any* analysis of the relevant factors and instead merely for the improper purpose of trying to delay the NIJC's FOIA Request by imposing search fees on NIJC in contravention of Section 552(a)(4)(A)(ii).

**V.      The Agency Erred In Denying NIJC's Request For A Fee Waiver And For Expedited Processing.**

69.     In addition, the Request qualifies for a fee waiver because the Request seeks documents, the disclosure of which "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. 552(a)(4)(A)(iii).

70.     Finally, an expedited review of the Request was warranted because it involves "[a]n urgency to inform the public about an actual or alleged federal government activity, if made by a person primarily engaged in disseminating information," and thus a "compelling need" for the documents sought.  5 U.S.C. § 552(a)(6)(E)(i); 6 C.F.R. § 5.5(d)(1)(ii).

## COUNT I
### (Violation of FOIA against DHS)

71.    NIJC incorporates and realleges Paragraphs 1-70 as if set forth in full herein.

72.    Under FOIA, DHS failed to comply with FOIA's time requirements and still to date has not provided a final response or document production in response to the Request.

73.    The requested records in NIJC's FOIA request are agency records subject to FOIA.

74.    Upon information and belief, DHS has records responsive to NIJC's FOIA request in their possession.

75.    NIJC has a statutory right to the records it seeks, and there is no legal basis for DHS's refusal to produce them.

76.    DHS has utterly disregarded the timeline set forth in FOIA and should be ordered to immediately produce the requested documents.

77.    DHS violated FOIA by failing to execute a sufficient search and to produce responsive records.

78.    DHS's failure to produce the requested documents is arbitrary and capricious.

79.    DHS failed to respond to NIJC's request within the statutory time period.  Thus, NIJC is deemed to have exhausted its administrative remedies.

## COUNT II
### (Violation of FOIA against USCIS)

80.    NIJC incorporates and realleges Paragraphs 1-70 as if set forth in full herein.

81.    The requested records in the Request are agency records subject to FOIA.

82.    NIJC has a statutory right to the records it seeks, and there is no legal basis for USCIS's failure to produce them.

83.     USCIS's failure to execute a sufficient search and to produce all responsive records violates FOIA, 5 U.S.C. § 552(a).

84.     USCIS's failure to produce the requested documents is arbitrary and capricious.

85.     Under FOIA, USCIS failed to comply with FOIA's time requirements.  To this date, USCIS has provided neither a final response to the Request nor the promised rolling productions of responsive documents.

86.     USCIS failed to respond to NIJC's request within FOIA time requirements and to its appeal within the statutory time period.  Thus, NIJC is deemed to have exhausted its administrative remedies.

## COUNT III
(Violation of FOIA against ICE)

87.     NIJC incorporates and realleges Paragraphs 1-70 as if set forth in full herein.

88.     Under FOIA, ICE failed to comply with FOIA's time requirements and still to date has not provided any response to the Request.

89.     The requested records in NIJC's FOIA request are agency records subject to FOIA.

90.     Upon information and belief, ICE has records responsive to NIJC's FOIA request in their possession.

91.     NIJC has a statutory right to the records it seeks, and there is no legal basis for ICE's refusal to produce them.

92.     ICE's failure to execute a search, let alone a sufficient search, and to produce responsive records violates FOIA, 5 U.S.C. § 552(a).

93.     ICE's failure to produce the requested documents is arbitrary and capricious.

94.     ICE failed to respond to NIJC's request within the statutory time period.  Thus, NIJC is deemed to have exhausted its administrative remedies.

## COUNT IV
### (Violation of FOIA against CRCL)

95.     NIJC incorporates and realleges Paragraphs 1-70 as if set forth in full herein.

96.     The requested records in NIJC's FOIA request are agency records subject to FOIA.

97.     Upon information and belief, CRCL has records responsive to NIJC's FOIA request in their possession.

98.     NIJC has a statutory right to the records it seeks, and there is no legal basis for CRCL's refusal to produce them.

99.     CRCL's failure to execute a sufficient search and to produce responsive records violates FOIA, 5 U.S.C. § 552(a).

100.    CRCL's failure to produce the requested documents is arbitrary and capricious.

101.    NIJC has appealed the CRCL's failure to produce document, thereby exhausting NIJC's administrative remedies.

## COUNT V
### (Violation of FOIA against OGC)

102.    NIJC incorporates and realleges Paragraphs 1-70 as if set forth in full herein.

103.    The requested records in NIJC's FOIA request are agency records subject to FOIA.

104.    Upon information and belief, OGC has records responsive to NIJC's FOIA request in its possession.

105.    NIJC has a statutory right to the records it seeks, and there is no legal basis for OGC's refusal to produce them.

106.    OGC's failure to execute a sufficient search and to produce responsive records violates FOIA, 5 U.S.C. § 552(a).

107.    OGC's failure to produce the requested documents is arbitrary and capricious.

108.    NIJC has appealed the OGC's failure to produce document, thereby exhausting its administrative remedies.

### COUNT VI
(Violation of FOIA against the DHS Privacy Office)

109.    NIJC incorporates and realleges Paragraphs 1-70 as if set forth in full herein.

110.    Under FOIA, the DHS Privacy Office failed to comply with FOIA's time requirements; producing a fraction of its responsive documents over nine and one-half months after the Request was received.

111.    The requested records in NIJC's FOIA request are agency records subject to FOIA.

112.    Upon information and belief, the DHS Privacy Office has additional records responsive to NIJC's FOIA request in their possession.

113.    NIJC has a statutory right to the records it seeks, and there is no legal basis for the DHS Privacy Office's refusal to produce them.

114.    The DHS Privacy Office's failure to execute a sufficient search and to produce all responsive records violates FOIA, 5 U.S.C. § 552(a).

115.    The DHS Privacy Office's failure to produce the requested documents is arbitrary and capricious.

116.    The DHS Privacy Office failed to respond to NIJC's request and to its appeal within the statutory time period.  Although the ALJ remanded the matter, the DHS Privacy similarly has failed to respond to the remand.  In addition, the ALJ's order failed to reach the

issue of the redactions. Accordingly, NIJC is deemed to have exhausted its administrative remedies.

## COUNT VII
### (Violation of FOIA against USCIS)

117.    NIJC incorporates and realleges Paragraphs 1-70 as if set forth in full herein.

118.    Under 5 U.S.C. § 552(a)(4)(A)(ii)(II)-(III) and 6 C.F.R. § 5.11(b)(6), NIJC qualifies as a representative of the news media.

119.    DHS in its September 13, 2011 letter acknowledge that NIJC qualifies as a representative of the news media under FOIA. Similarly, USCIS made the same determination in its April 27, 2012 letter.

120.    Upon the production of documents, USCIS reversed its position. Such a reversal was arbitrary and capricious and contrary to well established precedent.

## RELIEF REQUESTED

WHEREFORE, NIJC prays that this Court:

a)    Enter judgment in favor of NIJC and against DHS, USCIS, ICE, CRCL, OGC and the DHS Privacy Office;

b)    Declare that DHS, USCIS, ICE, CRCL, OGC and the DHS Privacy Office unlawfully failed to comply with FOIA in responding to NIJC's September 1, 2011 FOIA request;

c)    Enjoin the withholding of responsive records to NIJC's September 1, 2011 FOIA request and order the production of responsive documents and information by defendants DHS, USCIS, ICE, CRCL, OGC and the DHS Privacy Office;

d)    Find that DHS's, USCIS's, ICE's, CRCL's, OGC's and the DHS Privacy Office's failure to respond to NIJC's September 1, 2011 FOIA request is arbitrary and capricious;

e)    Find that USCIS's reversal of NIJC's status as a representative of the news media is arbitrary and capricious;

f)    Declare that NIJC is a representative of the news media under FOIA.

g)    Find that the DHS Privacy Office's application of the (b)(6) exemption was improper and order that such document be produced without redactions;

h)  Award NIJC its costs and reasonable attorneys' fees in this action; and

i)  Grant such other and further relief as the Court may deem just and proper.

December 5, 2012                              SNR DENTON US LLP


_____/s/ Anthony T. Eliseuson_____
*Attorney for Plaintiff NIJC*


Anthony T. Eliseuson (No. 6277427)
anthony.eliseuson@snrdenton.com
Natalie Spears (No. 6230320)
natalie.spears@snrdenton.com
Melissa Economy (No. 6282802)
melissa.economy@snrdenton.com
Irina Dashevsky (No. 6298331)
irina.dashevsky@snrdenton.com
SNR DENTON US LLP
233 S. Wacker Drive, Suite 7800
Chicago, Illinois  60606-6404
Telephone:  (312) 876-8000
Facsimile:  (312) 876-7934