# IN THE UNITED STATES DISTRICT COURT FOR
# THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| HEARTLAND ALLIANCE NATIONAL ) | |
| IMMIGRATION JUSTICE CENTER, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 12 CV 9692 |
| ) | |
| v. ) | Hon. Charles R. Norgle |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HOMELAND SECURITY, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This lawsuit arises out of a Freedom of Information Act ("FOIA") request that Plaintiff Heartland Alliance National Immigration Justice Center ("Plaintiff") sent to several federal agencies. Since filing this lawsuit, the parties have resolved many of their disputes, however, the applicability of two FOIA exemptions remain in controversy, 5 U.S.C. §§ 552(b)(7)(C) and (E) (respectively, "Exemption 7(C)" and "Exemption 7(E)"). Before the Court is a motion for summary judgment regarding Exemption 7(E) that was filed by Defendants United States Department of Homeland Security, United States Citizenship and Immigration Services ("USCIS"), United States Immigration and Customs Enforcement, United States Office of Civil Rights and Civil Liberties, United States Department of Homeland Security Office of General Counsel, and United States Department of Homeland Security Privacy Office (collectively, "Defendants"). Also before the Court is Plaintiff's cross-motion for summary judgment regarding Exemption 7(C). For the following reasons, Defendants' motion is granted and Plaintiff's cross-motion is granted.

## I. BACKGROUND

Plaintiff is a non-profit organization based in Chicago, Illinois, which provides information and legal aid to immigrants seeking refuge in this country. Defendants are a

conglomerate of federal agencies that serve to adjudicate whether applicants from foreign countries can receive immigration benefits; namely U.S. citizenship, permanent residence, or work visas.

On September 1, 2011, Plaintiff submitted a FOIA request to several federal agencies under 5 U.S.C. § 552, seeking information related to Tier III terrorist organizations as defined by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(3)(B)(vi)(III). Plaintiff subsequently received some, but not all, of the materials in response to its request; it was dissatisfied with the materials that were produced. On December 5, 2012, Plaintiff filed this lawsuit against Defendants seeking a declaratory judgment and injunctive relief to obtain all the materials it requested.

The parties have been able to resolve almost all of their disputes by entering into a settlement agreement on October 24, 2014. The settlement agreement required Defendants to produce documents associated with the Tier III designation, such as: final reports, policy statements, policy manuals, agency interpretations, and agency training materials. In addition, Defendants, were to:

> produce copies of completed 212(a)(3)(B) Exemption Worksheets from A-files of individuals who were granted or denied an exemption pursuant to INA 212(d)(3)(B)(i) from January 1, 2010 to June 1, 2013, where the individual had activities and/or affiliations with an organization that fell within the definition of a Tier III organization, as defined by INA 212(a)(3)(B)(vi)(III), at the time of the activity or affiliation.

Vaughn Index, Ex. 1, Settlement Agreement and Release ¶ 2.2(g). However, "[n]othing in [the] Agreement preclude[d] the Agency from applying any appropriate FOIA exemptions to information covered by [the] Agreement." Id. at ¶ 2.4. In the settlement agreement, the parties explicitly left one issue for the Court to decide: "the issue of whether the names of organizations that either now or at some time in the past fell within the INA definition of a Tier III organization are exempt from disclosure under the FOIA." Id. at ¶ 3.1.

2

Following the terms of the agreement, Defendants provided ninety Exemption Worksheets, over 180 pages, to Plaintiff on April 22, 2015, and filed a Vaughn Index with the Court on the same day. See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973). The Vaughn Index describes the produced documents—the Exemption Worksheets—in detail and explains why the FOIA permits Defendants to redact certain portions of them. The Exemption Worksheets are used by USCIS to document: (1) whether an applicant was affiliated with a Tier III terrorist organization; (2) whether an applicant's terrorism-related activity rendered him or her inadmissible under 8 U.S.C. § 1182(a)(3)(B); and (3) whether an applicant received an exemption from the terrorism-related inadmissibility finding. Defendants redacted from these Exemption Worksheets the sections containing the applicant's name, case number, date of birth, and country of origin; the name of the Tier III terrorist organization; and the names of the immigration officers who completed or approved the form. The produced Exemption Worksheets are approximately one percent of all the Exemption Worksheets prepared by USCIS staff during the relevant time period.

In addition to the Vaughn Index, and in support of their summary judgment motion, Defendants have submitted a declaration from Matthew Emrich ("Emrich"), the Acting Associate Director of the Fraud Detection and National Security Directorate at USCIS, and Aaron Martz ("Martz"), the Chief of the International Division of the Fraud Prevention Program Office at the U.S. Department of State. Defendants now request that the Court enter summary judgment in their favor on the issue of whether the names of Tier III terrorist organizations must be disclosed; arguing that Exemption 7(E) precludes their disclosure.

Plaintiff contests the applicability of the exemption, arguing that the names of the Tier III terrorist organizations do not qualify under Exemption 7(E) for three reasons. First, Defendants have not shown that the names are a non-public technique, procedure, or guideline used for law

3

enforcement purposes. Second, even if the names are considered a technique, procedure, or guideline, the criteria for discerning a Tier III organization is already public; therefore, Exemption 7(E) does not apply. Third, Defendants have not met their burden of establishing an uncontroverted reasonable risk that disclosure will result in circumvention of the law. Plaintiff does not contest that the records produced by Defendants are used for law enforcement purposes.

Plaintiff also cross-moves for summary judgment contending that Defendants' censoring of the applicant's date of birth and nationality from the Exemption Worksheets was an impermissible application of Exemption 7(C). In support of its motion, one of Plaintiff's attorneys has submitted fifteen exhibits; one such exhibit is ten of the ninety Exemption Worksheets produced by Defendants. No documents have been submitted to the Court for *in camera* review.

## II. DISCUSSION

### A. Standard of Decision

"In reviewing cross-motions for summary judgment, [the Court] take[s] the motions one at a time and then, as usual, construe[s] all facts and draw[s] all reasonable inferences in favor of the non-moving party." Advance Cable Co., LLC v. Cincinnati Ins. Co., 788 F.3d 743, 746 (7th Cir. 2015). "Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### B. The Immigration and Nationality Act

The Immigration and Nationality Act defines Tier III terrorist organizations as "a group of two or more individuals, whether organized or not, which engages in [terrorist activity]." 8 U.S.C. § 1182(a)(3)(B)(vi)(III). Terrorist activity is broadly defined and generally includes acts

or threats of violence. See id. § 1182(a)(3)(B)(iii). A person can engage in terrorist activities in many ways, some as simple as providing transportation or money to a terrorist organization. See id. § 1182(a)(3)(B)(iv). The names of Tier I and II terrorist organizations (for example, al-Qa'ida or Boko Haram) are published and applicants found to be members of those listed organizations are unconditionally inadmissible in this country. See id. § 1182(a)(3)(B)(i)(V). An applicant found to be a member of a Tier III organization, however, can be admitted if they "demonstrate by clear and convincing evidence that the alien did not know, and should not reasonably have known, that the organization was a terrorist organization." Id. § 1182(a)(3)(B)(i)(VI). Nonetheless, applicants found to be inadmissible for their membership in a Tier III organization can still receive immigration benefits if they are granted an exemption under 8 U.S.C. § 1182(d)(3)(B)(i) (such as providing material support while under duress).

**C. The Freedom of Information Act**

As Congress has amended the FOIA, it has limited executive agencies' discretion in keeping records confidential and has implemented a policy favoring disclosure. U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 754 (1989). The Supreme Court has also repeatedly "stressed the fundamental principle of public access to Government documents that animates the FOIA." John Doe Agency v. John Doe Corp., 493 U.S. 146, 151 (1989). The "FOIA thus mandates that an agency disclose records on request, unless they fall within one of nine exemptions." Milner v. Dep't of Navy, 562 U.S. 562, 565 (2011). When an agency claims an exemption, "the FOIA expressly places the burden 'on the agency to sustain its action' and directs the district courts to 'determine the matter de novo.'" Reporters Comm., 489 U.S. at 755 (quoting 5 U.S.C. § 552(a)(4)(B)). "A district court may grant summary judgment to the government in a FOIA case only if the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to

5

demonstrate that material withheld is logically within the domain of the exemption claimed." Patterson v. IRS, 56 F.3d 832, 836 (7th Cir. 1995) (internal quotations and citations omitted).

### *1. Exemption 7(E)*

The Court turns first to Defendants' argument that Exemption 7(E) legally entitles them to redact the names of the Tier III terrorist organizations from the Exemption Worksheets. Exemption 7(E) allows censor of (1) "techniques and procedures [used] for law enforcement investigations or prosecutions," or (2) law enforcement "guidelines" if the guidelines "could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Following general rules of grammar and punctuation:

> [t]he sentence structure of Exemption (b)(7)(E) indicates that the qualifying phrase ('if such disclosure could reasonably be expected to risk circumvention of the law') modifies only 'guidelines' and not 'techniques and procedures.' This is because the two alternative clauses that make up Exemption 7(E) are separated by a comma, whereas the modifying condition at the end of the second clause is not separated from its reference by anything at all.

Allard K. Lowenstein Int'l Human Rights Proj. v. Dep't of Homeland Sec., 626 F.3d 678, 681 (2d Cir. 2010). Therefore, if the Court determines that Defendants have demonstrated with enough detail that the names of Tier III organizations constitute techniques and procedures, then their nondisclosure is justified as a matter of law. If the Court finds that the withheld names qualify as guidelines, then to justify the withholding, Defendants must also show that there is a reasonable expectation that disclosure will result in circumvention of the law. Alternatively, if the Court finds that the names are not techniques, procedures, or guidelines, then the Tier III names must be disclosed.

The Court agrees with Plaintiff that the names of Tier III organizations are not techniques or procedures. The techniques and procedures for designating a group of individuals as a Tier III organization are largely encompassed in the comprehensive Immigration and Nationality Act. On the other hand, a guideline is "an indication or outline of future policy or conduct." Allard K.

6

Lowenstein Int'l Human Rights Proj., 626 F.3d at 682 (internal quotation omitted). And in the context of this case, immigration officers use the names of the Tier III organizations as an indication, or guideline, in future adjudications to determine the applicant's admissibility in the United States and whether the applicant is entitled to an exemption. Therefore, the Court finds that the names of the Tier III organizations qualify as a guideline. Accordingly, the Court rejects Plaintiff's argument that Tier III names are not records or information used as techniques, procedures or guidelines in law enforcement.

To justify that disclosure could reasonably be expected to risk circumvention of the law, Defendants rely on the declarations of Emrich and Martz. Emrich states that "[p]ublic disclosure of the names of such organizations, as captured in the Exemption Worksheets produced in this case, would enable aliens to conceal or misrepresent ties that they have with Tier III organizations." Defs.' Mot. for Summ. J., Ex. 1 ¶ 13. Emrich further opines that "[a]n alien who becomes aware that a particular group has been found to fall within the definition of an undesignated organization will have a strong incentive to falsify or misrepresent encounters, activities, or associations that he or she may have had with that group" and he provides five cases that are available as public records to support his opinion Id. at ¶ 13-14; see, e.g., Hussain v. Mukasey, 518 F.3d 534, 537-38 (7th Cir. 2008); Olayan v. Holder, 833 F.Supp. 2d 1052, 1060 (S.D. Ind. Dec. 15, 2011). Martz seconds Emrich's opinion in almost identical fashion, stating that "public disclosure of the names of [Tier III] organizations would inform aliens who are intent on circumventing the law to conceal or misrepresent ties that they might have with these organizations." Defs.' Mot. Summ. J., Ex. 2 ¶ 6. Defendants argue that Martz and Emrich's affidavits, combined with the Vaughn index, suffice to show that the names of Tier III organizations fall within the scope of Exclusion 7(E).

Plaintiff counters, arguing "[t]hat there is no reasonable risk of circumvention [that] makes sense because[] any knowing affiliate of a terrorist organization would certainly hide that affiliation regardless of whether they knew the United States had in fact determined the organization was terroristic in nature." Pl.'s Cross-Mot. for Summ. J. 13. Plaintiff's counter-argument is well-taken, because if any applicant intends to circumvent the laws of this country, the publication of Tier III names probably will not dissuade him or her. However, Defendants' reason for not disclosing the list of Tier III names is to promote honest responses to the immigration officers' inquiries and truthful answers are required to properly assess an applicant's immigration eligibility.

An applicant's eligibility for immigration benefits is based on the applicant's background, such as "criminal activity, travel history, military training, and associations[,]" and the importance of collecting truthful statements is heightened because an applicant's association with a Tier III organization frequently "comes from the applicant's own testimony." Defs.' Mot. for Summ. J., Ex. 2 ¶¶ 11, 13. Martz's statement makes sense because it would otherwise be difficult for U.S. officials to identify or learn about Tier III organizations, which are located in foreign countries and can be as small as two people. Given how information on Tier III organizations is collected, coupled with the documented cases in which immigration applicants have lied about or omitted their association with Tier III organizations, it is reasonable that the release of all Tier III organization names, not just the ones revealed through the course of litigation, could influence applicants to misrepresent or conceal their past or present involvement with foreign organizations. Furthermore, the incentive for an applicant to lie about his or her involvement with a Tier III organization is augmented because the unpublished Tier III classification has a more a lenient immigration benefits eligibility standard than the published

Tier I and II organizations. Therefore, the Court finds that releasing the names of Tier III organizations could reasonably lead to circumvention of the law.

In sum, Defendants must provide enough specific detail to justify that the "material withheld is logically within the domain of the exemption claimed." Patterson, 56 F.3d at 836. The Court finds that the Tier III names are guidelines, and based on the affidavits provided, full disclosure could reasonably lead to a circumvention of the law. Accordingly, Defendants have met their burden to show that Exemption 7(E) is appropriate here.

### *1. Exemption 7(C)*

Defendants also invoked Exemption 7(C) to warrant redacting the applicants' date of birth and nationality on the Exemption Worksheets that they provided to Plaintiff. "Exemption 7(c) excludes records or information complied for law enforcement purposes, 'but only to the extent that the production of such [materials] ... could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" Reporters Comm., 489 U.S. at 756 (quoting 5 U.S.C. § 552(b)(7)(C)). To determine whether disclosure of a person's private information is unwarranted, Exemption 7(C) requires the Court to balance the privacy interest in keeping the records confidential against the public's interest in disclosure. Id. at 762; see also Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004).

In Reporters Committee, the plaintiff requested the criminal record of a specific individual, alleged organized crime figure Charles Medico. 489 U.S. at 757. In Favish, the plaintiff requested disclosure of pictures taken during the investigation of the death of Vincent Foster, Jr., the deputy counsel to President Clinton, and Mr. Foster's family objected to the request. 541 U.S. at 166. In both cases the Supreme Court allowed the defendant agencies to use Exemption 7(C), holding that the requested information amounted to an unwarranted invasion into the personal privacy of Mr. Medico and the Foster family, respectively.

9

This case is substantially different than <u>Reporters Committee</u> and <u>Favish</u> because the subjects of the Exemption Worksheets have not been identified and no private party is objecting to the release of any personal information. The Exemption Worksheets identify the applicant by either "Applicant" or initials; no names are provided. The "Facts of the Case" on the Exemption Worksheets are similar—the majority of applicants were forced by threats and acts of violence to provide some form of support to Tier III organizations—making it hard to discern one applicant from the other using only the description of their association with an unnamed Tier III organization. Disclosure of the applicant's date of birth and nationality would result in the assembly of mere statistics. It is unlikely that an applicant could be identified based on these two data sets and the short description of their involvement with an unnamed Tier III organization.

As justification for redacting the applicants' date of birth and nationality, Defendants rely on 8 C.F.R. § 208.6, which generally prohibits public disclosure of an asylum claimant's information to a third-party. Defendants also submit a question and answer "Fact Sheet" produced by USCIS in 2012, which states, inter alia, that disclosure of private information would result in "retaliatory measures by government authorities or non-state actors in the event that the claimant is repatriated, or endanger the security of the claimant's family members who may still be residing in the country of origin." Defs.' Combined Reply and Opp to Pl.'s Cross-Motion, Ex. 1 at 1. The Court notes that both Plaintiff and Defendants share in the common goal of safeguarding asylum seekers and refugees. However, the statement in this "Fact Sheet" is without reference to a specific case, a detailed report, or any factual support. It appears to be generalized speculation. Moreover, the agency affidavits do not address Exemption 7(C) and are void of any justification that the applicants' date of birth and nationality are logically within the domain of the exemption claimed. Without a link or connection to an individual person, the privacy concerns in this case are low to nil.

Plaintiff does not request the applicants' names; it only wants age and nationality information for a statistical review on the treatment of minors and to discern any "disparate impact" on applicants based on their national origin. Plaintiff's request follows the spirit of the FOIA, which is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." John Doe Agency, 493 U.S. at 152 (internal quotation omitted); see also Favish, 541 U.S. at 171 (quoting Reporters Comm., 489 U.S. at 773) ("FOIA is often explained as a means for citizens to know 'what their Government is up to.'"). When balancing the competing interests in privacy and disclosure, the Court finds that redacting the date of birth and nationality of the applicants is not logically within Exemption 7(C).

### III. Conclusion

Defendants have submitted evidence to justify that the names of Tier III organizations are "guidelines" as defined by 5 U.S.C. § 552(b)(7)(C), disclosure of which could reasonably lead to circumvention of the law. Therefore, Defendants' motion for summary judgment is granted. On Plaintiff's cross-motion, the Court finds that Defendants' disclosure of the applicants' date of birth and country of origin will not amount to an unwarranted invasion of personal privacy. Therefore, Defendants' use of 5 U.S.C. § 552(b)(7)(C) to redact this information is not permissible and Plaintiff's cross-motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 17, 2016